**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No.  13 CR 772 |
| | ) | |
| v. | ) | Judge Bucklo |
| | ) | |
| JULIAN MARTIN, | ) | Magistrate Judge Cole |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
REGARDING EVIDENCE OBTAINED FROM WIRETAPS**

**INTRODUCTION**

Defendant, Julian Martin, has filed two motions to suppress.  The first seeks to suppress wiretap and derivative evidence obtained pursuant to wiretap orders enter on April 7, 2011, and April 29, 2011. The second focuses on guns found on him when he was arrested in connection with a traffic stop for allegedly making a sudden lane change without signaling. Since it is conceded that the wiretaps led directly to the police following Mr. Martin, hoping, as they admitted at the evidentiary hearing, that he would  violate the traffic laws so they could stop him, a finding in favor of Mr. Martin on the first motion perforce requires granting the second motion. And so we begin with the motion to suppress the wiretaps.

**A.**

Mr. Martin argues that the communications intercepted by way of those wiretaps were obtained in violation of 18 USC § 2518(10)(a)(1).  He makes many of the same arguments already addressed and rejected in the report and recommendation covering the same affidavit and wiretap on Nathaniel Hoskins's phone, and those arguments will not be revisited here. [*See* Dkt. 619].  But

Mr. Martin also has a catalog of material information he claims was wrongfully omitted from the affidavits, and he contends that the government failed to provide the "full and complete" statements of facts required under 18 USC §§2510, *et seq.* Judge Bucklo has referred this motion to me for a report and recommendation. *See Peretz v. United States*, 501 U.S. 923, 937 (1991)(district judge may refer a motion to suppress evidence to a magistrate judge for a report and recommendation, and thereafter, if the defendant requests it, the defendant is entitled to a *de novo* review by the district court judge).

As Mr. Martin argues, in order to obtain authorization for a wiretap, the government must make "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); *United States v. Durham*, – F.3d –, –, 2014 WL 4362838, 5 (7th Cir. 2014); *United States v. Long*, 639 F.3d 293, 301 (7th Cir. 2011). Still, the government's burden "is not great," and compliance with the statutory requirement must be evaluated in a "practical and common-sense fashion." *Durham*, – F.3d –, –, 2014 WL 4362838, 5; *United States v. Campos*, 541 F.3d 735, 746 (7th Cir. 2008). The statute does not require the government to show "absolute" necessity, *Durham*, – F.3d –, –, 2014 WL 4362838, 5; *Campos*, 541 F.3d at 746, or that wiretaps be used only as a last resort. *United States v. Long*, 639 F.3d 293, 301 (7th Cir. 2011); *United States v. McLee*, 436 F.3d 751, 762–63 (7th Cir.2006). The point is to ensure that wiretaps are not used routinely as the first step in an investigation. *Durham*, – F.3d at –, 2014 WL 4362838, 5. As already determined in connection with Nathaniel Hoskins's motion to suppress, that much is more than clear from the government's affidavits in this case.

Here, the concern is with claimed omissions from the affidavits. The affidavit in question is a massive, detailed account of the investigation at the time, covering nearly 100 pages. It includes none of the familiar and immaterial boilerplate that is often seen in cases like this. Still, intentional or reckless omission of facts may be fatal to a wiretap application. *See United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014)(defendant must show material falsity or omission and deliberate or reckless disregard for the truth to obtain *Franks* hearing); *United States v. Daoud*, 755 F.3d 479, 486 (7th Cir. 2014)("The *Franks* framework applies to misleading omissions in the warrant affidavit (so long as they were deliberately or recklessly made) as well as to false statements."); *Heffernan v. City of Chicago*, 2012 WL 642536, 2 (N.D.Ill. 2012). Because officers must always make decisions about what to include in and omit from a warrant application, a *Franks* violation based on an omission requires a showing that the material information was omitted deliberately or recklessly to mislead the issuing magistrate. *United States v. Williams*, 718 F.3d 644, 650 (7th Cir. 2013).

In many instances, Mr. Martin has simply failed to meet his initial burden of demonstrating that an omission was material. In many others, the motion is based on in imprecise reading of the affidavit that is contrary to or unsupported by the facts. At bottom, Mr. Martin demands a hypertechnical assessment of the affidavit, which is something the courts do not allow. *See United States v. Harris*, 403 U.S. 573, 579 (1971)(". . . policeman's affidavit 'should not be judged as an entry in an essay contest,' . . . but, rather, must be judged by the facts it contains."); *United States v. Hicks*, 650 F.3d 1058, 1065-66 (7th Cir. 2011)(". . . reviewing courts will not invalidate warrants 'by hypertechnical rather than commonsense interpretation' of detailed affidavits found sufficient for probable cause . . . .").

**Omissions Regarding CW1**

*1. CW1's statement in January 2011 that he could arrange the purchase of narcotics for delivery to Chicago via Amtrak.*

Mr. Martin is not entirely clear as to why this constitutes a material omission, but apparently, his position is that CW1 was all the government needed in the way of investigatory techniques making a wiretap unnecessary. As Mr. Martin concedes, however, the affidavit *did* reveal CW1's high-ranking position in the gang. [Dkt. #587, at 8-9]. His ability to arrange a drug purchase would add nothing to that. Also, CW1 was incarcerated during the time of the wiretap recordings. The government's affidavit, as noted in the earlier report and recommendation, explained why CW1's release for a controlled buy – if that is what Mr. Martin is insinuating – was not feasible. (Hoskins R&R, at 4).[1] Moreover, a controlled buy would really not go very far in revealing the structure of the gang or furthering what the investigation had already uncovered.

*2. CW1's statement that Goins was taking care of IIVL business while Hoskins was away.*

Mr. Martin argues that this fact contradicts the affidavit's assertion that Mr. Martin was running the day-to-day operations of the gang while Hoskins was away. But there is no omission

---

[1] Mr. Martin argues that the government ought to have released CW1 on his word that he would not commit any violent acts once he was back on the street. That's far to much of a leap of faith to ask and, moreover, if CW1 was suddenly "sheepish," common sense and human experience, which always have a role to play, Common sense and human experience—which always have a role to play, *United States v. Montoya De Hernandez,* 473 U.S. 531, 542 (1985); *Nix v. Williams*, 467 U.S. 431, 444 (1984); *Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir.2009); Posner, How Judges Think at 116 (Harv. Univ. Press 2008), especially in Fourth Amendment cases, teaches that that hesitancy would surely arouse suspicion among the gang members. And that suspicion could have had fatal consequences. Again, the cases are uniform in requiring that courts take a commonsensical, as opposed to a fanciful and unrealistic view of the supporting affidavit.

here. The statement about Goins is set forth at paragraph 60 of the affidavit.[2] And, actually, CW1 did not say Goins was in charge all the time Hoskins was away, simply that he was "taking care of the business right now."

*3. CW1's statements about gang members who would be responsible for keeping heroin supplied to the open air drug market at Thomas and Keystone.*

This is another instance of Mr. Martin failing to actually read the affidavit before filing what is looking – more and more – like a knee-jerk motion, and a borderline frivolous one at that. CW1's assertions regarding suppliers to the Thomas and Keystone drug market are set forth at paragraphs 14(c), 14(g), and 14(m).

*4. CW1's statement that his release on bond could help stabilize internal conflicts.*

It's unclear from Mr. Martin's brief why this statement is material. Moreover, the affidavit indicated why CW1 would not be released on bond, as noted in the report and recommendation on Hoskins's motion to suppress.

*5. The location of a "safe house" on Washington Blvd. Between Leclaire and Lavergne.*

It is, once again, unclear from Mr. Martin's motion why this might be a material omission. The affidavit does address another such house right in that vicinity – perhaps the one Mr. Martin's brief refers to (although by the wrong address) on Washington Blvd. at Lotus, just a few blocks away. (Affidavit, ¶ 92(b)). Moreover, the affidavit explains that CW1's safe house information – locations where the gang "historically" stored narcotics – was not current enough for a search warrant. (Affidavit, ¶ 94). If Mr. Martin is arguing that investigatory efforts short of a wiretap had given the authorities all the information they needed, that argument is not persuasive.

---

[2] The government's citation to the affidavit is incorrect. [Dkt. # 638, at 12].

How much evidence is enough? That is a question answerable only in the repose of informed hindsight, and therefore it is not one the law requires officers to answer on the spot. "[U]sing a wiretap to obtain additional incriminating evidence against a defendant is not problematic." *Campos*, 541 F.3d at 748; *United States v. Fudge*, 325 F.3d 910, 919 (7th Cir. 2003); *United States v. Adams*, 125 F.3d 586 (7th Cir. 1997). The burden of proving guilt beyond a reasonable doubt is high. *Campos*, 541 F.3d at 748, The statute does not mandate that the government gamble as to how much evidence will be enough to prosecute. The government is entitled to go beyond a few names and roles and "identify the full extent of this organization and its operatives." *Id.*

*6. CW1's information regarding Faulkner's money laundering and copper theft and sales.*

Mr. Martin fails to suggest how this information is material to the determination of whether to issue a wiretap order, specifically how it might have led the judge to believe that a wiretap was not necessary.

**Omission Regarding CW1**

Mr. Martin complains that the affidavit failed to indicate that CW2 stated that he "would be able" to purchase a quantity – 2 and a quarter ounces – of cocaine from Mr. Martin. The insinuation is that undercover buys ought to have been undertaken in lieu of a wiretap. But the law does not require that any other investigative procedures be tried first before an order is issued for the interception of wire communications or that a wiretap be used as a last resort. *United States v. Campos*, 541 F.3d 735, 746 (7th Cir. 2008). In this instance, the affidavit reveals why the controlled buy would be a difficult undertaking, if possible at all: CW2 was incarcerated at the time. (Affidavit, ¶ 84).

**Omission Regarding Victim A**

Next, Mr. Martin argues that there is no mention of the government's second interview with Victim A or the information garnered from it. Mr. Martin points out that Victim A discussed the gang's criminal activities near Division and Pulaski, the individual in charge of the Four Corner Hustlers – another gang, the individual supplying drugs to that gang, and the date of a party to be attended by numerous gang members. Victim A also told investigators that Mr. Martin was selling marijuana at Division and Pulaski.

The affidavit reveals that Victim A was arrested, waived his *Miranda* rights, and was interviewed in February 2011. (Affidavit, ¶ 20). It set out Victim A's story about his drug selling at Division and Pulaski and his dealings with Mr. Martin. He said he could arrange to buy cocaine from Mr. Martin. (Affidavit, ¶ 21). As he was incarcerated at the time, Victim A's utility to the investigation was limited for the same reasons as CW1's and CW2's was. As it is with most of his motion, Mr. Martin is unclear why the information supposedly gleaned from a second interview regarding the Four Corner Hustlers would have alerted the issuing judge that a wiretap was unnecessary. The insinuation seems to be that the police were supposed to continue to mine Victim A for information thereby obviating the need for any more intrusive investigatory technique. While the necessity requirement is designed to discourage the use of wiretaps as a first-line investigative tool, it "was not intended to ensure that wiretaps are used only as a last resort in an investigation." *United States v. Long*, 639 F.3d 293, 301 (7th Cir. 2011). Again, an unamplified gripe about tidbits of information left out here or there does not meet Mr. Martin's burden to show an intentional or reckless omission of material information.

**Omissions Regarding Confidential Sources**

Mr. Martin contends that the affidavit left out information provided by a confidential informant about drug sales at Thomas and Keystone, violent crimes, and a November 2010 shooting. Mr. Martin contends that such information, if included, would have shown the effectiveness of investigatory techniques aside from wiretaps. But again, the government is not required to gamble on how much evidence might be required to secure a conviction. *Campos*, 541 F.3d at 748; *Fudge*, 325 F.3d at 919. Moreover, the affidavit revealed this confidential informant – albeit in a footnote – and indicated that police were "unable to corroborate some of the information provided" and "determined that [the informant] learned some of the information second hand." Thereafter, the authorities were unable to locate the informant and assumed he was no longer interested in cooperating.

**Omission of Information Regarding Police Surveillance Camera**

Mr. Martin's next problem with the affidavit is that it omitted some information gleaned from a police camera in the area of Thomas and Keystone. The affidavit revealed the use of the camera and the fact that it picked up activity by at least two high-ranking gang members. (Affidavit, ¶¶ 25, 56, 57, 104). The salespeople at the drug market were aware of the cameras and endeavored to avoid them, rendering them of limited utility. (Affidavit, ¶ 25).

**Exculpatory Calls**

Finally, Mr. Martin argues that the affidavit failed to set forth intercepted calls in which he is asked by Hoskins to arrange his flight to Chicago from Las Vegas. Mr. Martin claims it took him two weeks to do so because he was broke. Intercepted calls had him telling Hoskins he wasn't doing any "hustling." Mr. Martin claims that, had these calls been included in the affidavit, the judge

8

would have determined that would have been unnecessary to tap Mr. Martin's phone because he was not involved in drug trafficking.

As the government's brief points out, Mr. Martin had every incentive to be overly modest about his activities in these few calls with Hoskins, because Hoskins wanted him to foot the bill for an airplane ticket. Also, these were just a sample of Mr. Martin's phone conversations, with others making it clear that he occupied a leadership position in the gang. And finally, the summaries of these calls were made available to the issuing judge in the reports filed in the wake of the wiretap order on Target Phone 1.

## CONCLUSION

It is recommended that the defendant's motion to suppress wiretap evidence [Dkt. # 587] be DENIED.

Respectfully submitted,

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/8/14

Specific, written objections to the Report and Recommendation must be filed with the Clerk of the District Court for the Northern District of Illinois, 219 S. Dearborn, 20th Floor, Chicago, IL 60604, within fourteen (14) days of being served with a copy of the Report and Recommendation. Failure to file specific, written objections within the specified time waives the right to appeal this Report and Recommendation. *See* Fed.R.Civ.P. 72(b)(2); 28 U.S.C. 636(b)(1)(C); *United States v. Brown*, 79 F.3d 1499, 1504, n. 4 (7th Cir. 1996); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir.1995); *Video View, Inc. v. Studio 21 Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).